IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CHEYENNE LAMBERT and BLAKE LAMBERT, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 6:24-cv-454-JDK |
| OCTAPHARMA PLASMA, INC., | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER
REGARDING MOTION TO DISMISS**

This is a tort case arising from a blood plasma donation. Plaintiffs Cheyenne and Blake Lambert sued Defendant Octapharma Plasma, Inc., for various state tort claims after Octapharma allegedly mishandled and misreported the results of Cheyenne's screener for Hepatitis B. Docket No. 1. Octapharma moves to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). Docket No. 4.

As explained below, Octapharma's motion is **GRANTED-IN-PART**: the negligent processing, tortious interference, and conspiracy claims are **dismissed without prejudice** subject to amendment; the privacy claim and the request for declaratory judgment are **dismissed with prejudice**. The motion is **DENIED** on all other grounds.

I. FACTUAL BACKGROUND

The relevant facts as alleged in the Lamberts' complaint are as follows. *See Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986) (noting

1

that a court must "accept as true all well pleaded facts in the complaint" when evaluating a Rule 12(b)(6) motion).

In December 2023, Cheyenne donated plasma for compensation at Octapharma's plasma processing center in Tyler, Texas. Docket No. 1 ¶ 8. Soon after, Octapharma notified "Cheyenne that she had tested positive [for] Hepatitis B." *Id*. Octapharma then allegedly reported Cheyenne's test result to the National Donor Deferral Registry and banned her "permanently from donating plasma at any plasma donation center in the nation." *Id*. Octapharma also allegedly informed Blake that he was "banned temporarily from donating plasma at any donation center in the nation" because his wife Cheyenne had tested positive for Hepatitis B. *Id*. ¶ 9.

The Lamberts contend, however, that Cheyenne does not have Hepatitis B. *Id*. ¶ 8. In fact, Cheyenne "has presented subsequent test results to Defendant" indicating that she is negative for Hepatitis B. *Id*. The Lamberts further allege that Octapharma performed mandatory "confirmatory testing" that shows Cheyenne is negative for Hepatitis B. *Id*. ¶¶ 8–15. Octapharma therefore allegedly "knew" the reported positive result was a "false-positive" at the time the Lamberts' names were placed on the Registry. *Id*. ¶ 11. But Octapharma has not corrected the record, allegedly informing Blake, "Cheyenne, and other third parties, that Plaintiff Cheyenne had supposedly tested positive for Hepatitis B." *Id*.

As a result, the Lamberts allege that they have suffered "severe mental anguish and emotional distress" and that Cheyenne is "unable to donate her organs, or receive organ transplants; and this has impaired her ability to obtain health

insurance, life insurance, medical treatment and employment." *Id.* ¶¶ 11, 15. They additionally assert that Octapharma's conduct has interfered with their "right" to "donate plasma for compensation." *Id.* ¶ 15.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted." "[C]laims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). Claims may also be dismissed if the plaintiff fails to plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and must "make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

As noted above, in evaluating a Rule 12(b)(6) motion, the Court must "accept as true all well pleaded facts in the complaint." *Campbell*, 781 F.2d at 442. "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). And when considering a Rule 12(b)(6) motion, "a district court must limit itself to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "Federal courts apply state

3

substantive law in diversity jurisdiction cases, but apply federal procedural law." *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003) (citation omitted).

### III. ANALYSIS

The Lamberts assert claims of negligence, defamation, tortious interference with prospective business relations, and breach of privacy against Octapharma. Docket No. 1 ¶¶ 17–51. In addition to damages, they seek declaratory and injunctive relief. *Id.* ¶¶ 51–52. While lawsuits based on plasma collection centers' disease screening results are "very novel," several district courts in Texas have recently addressed these claims and nearly identical briefing. *Uribe v. Grifols USA, LLC*, No. 7:22-cv-332, Docket No. 22, slip op. at 6 n.9 (S.D. Tex. Oct. 20, 2023); *see also Anderson v. Octapharma Plasma, Inc.* (*Anderson I*), 2020 WL 1083608 (N.D. Tex. Mar. 6, 2020); *Anderson v. Octapharma Plasma, Inc.* (*Anderson II*), 2020 WL 7245075 (N.D. Tex. Dec. 9, 2020); *Anderson v. Octapharma Plasma, Inc.* (*Anderson III*), 2021 WL 1894689 (N.D. Tex. May 11, 2021); *Morris v. Grifols USA LLC*, 5:22-cv-109, Docket No. 41 (E.D. Tex. Aug. 17, 2023).

Octapharma moves to dismiss the complaint in its entirety. Docket No. 4. The Court addresses each claim in turn.

#### A. Defamation

The Lamberts claim Octapharma defamed them by inaccurately reporting them as Hepatitis B-positive. Docket No. 1 ¶ 30. Octapharma seeks to dismiss this claim on the ground that the test result it shared to the Registry was truthfully reactive. Docket No. 4 at 8–10. Octapharma also contends that Blake's defamation

4

claim fails because the complaint does not allege that Octapharma ever published any test result regarding Blake. *Id.* at 9.

In Texas, defamation requires "(1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages." *Walker*, 938 F.3d at 743 (quoting *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). "Accusing someone . . . of having a foul or loathsome disease [is an] example of defamation *per se*." *In re Lipsky*, 460 S.W.3d at 596.

The falsity of the defamatory statement is presumed, but the truth of the statement is an affirmative defense. *See Walker*, 938 F.3d at 743. While substantial truth is a defense to defamation, it is not an absolute one. In fact, "a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000) (collecting cases). Thus, "a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* at 115.

Here, the Lamberts allege that Octapharma reported Cheyenne's screener result as reactive to its competitors and other third parties despite knowing that this was "false and erroneous" due to "negative confirmatory testing that Defendant was required to have done." Docket No. 1 ¶ 11; *see also id.* ¶ 9 (asserting Cheyenne

5

"actually tested negative according to the mandatory confirmatory testing that Defendant had done"). At the pleadings stage, this is sufficient "to preclude [Octapharma's] motion to dismiss based on the affirmative defense of truth." *Anderson II*, 2020 WL 7245075, at *12; *Morris*, slip op. at 5–6 (same); *Uribe*, slip op. at 21–22 (same).

Blake also states a plausible claim for defamation. Contrary to Octapharma's assertions, the complaint alleges that Octapharma "reported Plaintiffs [i.e., Cheyenne *and* Blake] to a registry of stigmatized donors." Docket No. 1 ¶ 23. Regarding Blake specifically, the complaint alleges Octapharma notified him "that he had been banned temporarily from donating plasma *at any donation center in the nation* because his wife, Plaintiff Cheyenne, had allegedly tested positive for Hepatitis B." Docket No. 1 ¶ 9 (emphasis added). A reasonable inference from this allegation is that Octapharma allegedly shared information about Blake with other parties despite knowing that Cheyenne's screener was either negative or a false-positive.

Accordingly, Octapharma's motion to dismiss the defamation claims is **DENIED**.

## B. Negligence

Octapharma next moves to dismiss the Lamberts' claims for negligence in testing Cheyenne's plasma sample and reporting false-positive test results to third parties. Docket No. 4 at 4. Other courts addressing similar complaints have found that these negligence claims come in two varieties: (1) negligent processing claims

6

and (2) negligent reporting claims. *See, e.g., Anderson I*, 2020 WL 1083608, at *6; *Uribe*, slip op. at 5.

Under Texas law, the elements of a negligence claim "are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *HIS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). "The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). This "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.* Whether the defendant breached a duty, however, is a question of fact. *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App.—Dallas 2004, pet. denied).

The Court first addresses negligent processing and then negligent reporting.

### 1. Negligent Processing

The Lamberts allege that Octapharma owed them a duty to "obtain, handle, and process their plasma donations and to test them with reasonable care to get accurate results." Docket No. 1 ¶ 21. And allegedly, Octapharma "likely breached" the following duties, resulting in the Lamberts' harm:

> failing to properly store and transport Plaintiffs [sic] plasma samples at the requisite temperatures and within the requisite time period; failing to identify and safely maintain Plaintiffs [sic] samples independent from that of other donors'; and/or follow proper screening protocols and procedures . . . .

*Id.* ¶ 22.

The Court follows its sister courts in assuming without deciding that, under Texas law, a plasma donation center owes a plasma donor a duty of reasonable care

in processing the donor's samples. *See Anderson II*, 2020 WL 7245075, at *10; *Morris*, slip op. at 8; *see also Uribe*, slip op. at 6–9 (making an Erie guess and finding that a legal duty is not foreclosed by Texas caselaw). The Court does so because the Lamberts failed to plausibly allege that Octapharma breached its duty in any event. *See Anderson II*, 2020 WL 7245075, at *10; *Anderson III*, 2021 WL 1894689, at *5–6; *Morris*, slip op. at 9; *Uribe*, slip op. at 9–11.

Despite the above list of "wholly conclusory" allegations, the Lamberts "do not even attempt to set forth a factual basis" undergirding those alleged breaches. *Uribe*, slip op. at 10. For instance, the Lamberts do not allege the "requisite temperatures" or "requisite time period" at which plasma samples must be stored and transported or the "proper screening protocols and procedures." Docket No. 1 ¶ 22. Nor does the complaint offer any support for the proposition that Cheyenne's test was "mixed-up" with someone else's. *Id.* ¶¶ 22, 34. Instead, their only support for a negligent processing claim is that they are in fact Hepatitis B-negative when Octapharma reported them positive. *See, e.g.*, Docket No. 1 ¶¶ 8–11, 13, 23, 34.

The Lamberts' negligent processing claim thus boils down to the assertion that Octapharma must have been negligent because Cheyenne's screener rendered a false-positive result or was otherwise inaccurate; in other words, "the thing speaks for itself." *See* Docket No. 1 ¶ 26 (asserting that negligence is alleged through the doctrine of *res ipsa loquitur*). But the *res ipsa loquitur* doctrine does not establish a breach. *See Uribe*, slip op. at 10; *Anderson II*, 2020 WL 7245075, at *10; *Morris*, slip op. at 9. As Texas courts have long held, "[t]he Res ipsa doctrine is applicable when

8

two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974) (collecting cases). The likelihood of causes other than negligence "must be so reduced that the jury can reasonably find by a preponderance of the evidence that the [defendant's] negligence, if any" caused the plaintiff's injury. *Id.* (citation omitted).

The Lamberts have failed to allege that false-positive tests or inaccurate test reporting occurs only by negligence. *See Uribe*, slip op. at 11 (noting that the plaintiff had "offered no factual allegations that false positives for HIV do not ordinary [sic] occur in the absence of negligence"); *Anderson II*, 2020 WL 7245075, at *10 (similar); *Morris*, slip op. at 9. In fact, other allegations in the complaint undercut the Lamberts' *res ipsa* argument by acknowledging that "a percentage of [Octapharma's] testing results in false positive test results," Docket No. 1 ¶ 25, and that Octapharma is required by federal law to perform confirmatory testing after a positive screening test, *id.* ¶ 18. The only reasonable inference from these allegations is that some screeners will be false positives regardless of any negligence. *See Morris*, slip op. at 9.

The Lamberts' counterargument is unpersuasive. Besides reiterating their allegations, they assert that Octapharma "breached **at least** the duty to retest an alleged Hepatitis-B blood sample from Plaintiff and notify her of any results." Docket No. 8 at 16 (citing 21 C.F.R. § 610.46(a)(2)–(3)). This argument does not support a

9

negligent processing claim for two reasons. First, the complaint repeatedly alleges that Octapharma did conduct confirmatory testing as required by 21 C.F.R. § 610.40(e). *See, e.g.*, Docket No. 1 ¶ 8 (alleging that "Defendant did the legally required confirmatory testing"); *id.* ¶ 9 (alleging that Cheyenne "actually tested negative according to the mandatory confirmatory testing that Defendant had done"). Second, the regulations cited by the Lamberts require "lookback" testing and notification only for people who screen positive for Human Immunodeficiency Virus, not Hepatitis B. *See* 21 C.F.R. § 610.46(a)(2) ("You must perform further testing for HIV . . . ."); *id.* § 610.46(a)(3) ("You must notify consignees of the results of further testing for HIV . . . .").

Accordingly, Octapharma's motion is **GRANTED** on this ground, and the Lamberts' negligent processing claim is **DISMISSED**.

### 2. Negligent Reporting

The Lamberts also allege that Octapharma was negligent for (a) reporting Cheyenne's false-positive test results despite knowing that she did not have Hepatitis B and (b) failing to supplement the record or remove the Lamberts from the Registry. Docket No. 1 ¶ 25. Octapharma moves to dismiss this claim because it is legally required to "defer donors testing reactive by a screening test" for Hepatitis B. 21 C.F.R. § 610.41(a). And because Octapharma followed its regulatory obligations to the letter, Octapharma contends, it could not be negligent. *See* Docket No. 4 at 7–8.

To the extent the Lamberts' claim is based on Octapharma's reporting Cheyenne's initial screener, the Court agrees with Octapharma. As the Court has already noted, the regulations cited by the Lamberts apply to HIV, not Hepatitis B,

10

results.  *See* 21 C.F.R. § 610.46(a)(2)–(3).  Thus, *Morris* is distinguishable on this point because it dealt with a different disease and duties.  *See* slip op. at 10 (finding a duty to share the results of confirmatory testing for donors who initially tested reactive for *HIV* under § 610.46(a)(3)).  The Lamberts have pointed to no regulations requiring or even permitting a plasma collection center to refrain from reporting a reactive initial screener—false-positive or not.  *See Uribe*, slip op. at 12; *Anderson II*, 2020 WL 7245075 (finding no authority "that would require defendants to retest plaintiffs' samples or obtain and test samples before reporting reactive tests to" the Registry).  And as *Uribe* noted, Texas law is unlikely to recognize a duty for plasma donation centers to avoid reporting reactive screeners to the Registry.  *See* slip op. at 12 n.13 (noting that "the social utility of reporting positive test results in the face of conflicting test results" is "compelling" given the societal risks of diseases spreading through donated blood products).

To the extent, however, the Lamberts assert that Octapharma was negligent in refusing to supplement the record after subsequent testing showed Cheyenne did not have Hepatitis B, the Lamberts have stated a plausible claim.  *See Uribe*, slip op. at 13–16.  Under Texas law, courts consider "several interrelated factors" in determining whether a common law duty exists.  *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).  These factors include "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant."  *Id.*  The Court agrees with

11

*Uribe* that these factors support finding a duty to supplement the record after confirmatory testing negates an initial screener. *See* slip op. at 13–15.

First, the "risk, foreseeability, and likelihood of injury" to donors and family like Cheyenne and Blake are obvious. *See Phillips*, 801 S.W.2d at 525; *Uribe*, slip op. at 14 ("If there is in fact no other way to correct the misdiagnosis, donors like Uribe would be powerless to donate plasma anywhere, presumably through no fault of their own."). The Lamberts have alleged that their designation as Hepatitis B-positive has left Cheyenne "unable to donate her organs, or receive organ transplants; and this has impaired her ability to obtain health insurance, life insurance, medical treatment and employment." Docket No. 1 ¶ 15. And because 21 C.F.R. § 610.41(a) requires plasma collection centers like Octapharma to report reactive tests to the Registry, this harm is directly linked to the centers' behavior. *See Uribe*, slip op. at 14; *cf. also Hous. Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 588 (Tex. 2023) (rejecting a third-party drug tester's duty to its employer-client's employee because, in part, "any harm an employee sustains" from the false-positive drug test depends on "whether and how the employer chooses to terminate or discipline the employee in response"). Second, "[t]here is no discernable social utility in having would-be plasma donors wrongfully excluded from donating on the basis on an inaccurate test"; whereas, an accurate Registry has much social utility. *Uribe*, slip op. at 15. Finally, placing a burden of reasonable care on a defendant to supplement the record is sensible where the complaint indicates that plasma donation centers are the only actors capable of doing so. *Id.*

12

The Lamberts, moreover, plausibly alleged that Octapharma breached this duty. *See id.* The Lamberts allege that they gave Octapharma "subsequent test results" showing Cheyenne does not have Hepatitis B, that Octapharma conducted its own confirmatory testing corroborating the Lamberts' claim, and that Octapharma still refused to supplement its report to the Registry or remove the Lamberts. Docket No. 1 ¶¶ 8–11. Taken as true, these facts support a claim for negligent reporting at the pleading stage. *See Uribe*, slip op. at 16.

Thus, Octapharma's motion to dismiss the Lamberts' negligent reporting claim is **DENIED**.

### C. Tortious Interference and Conspiracy

The Lamberts also allege that Octapharma conspired with other plasma collection companies to "form an association and national registry to use to collectively ban" donations from donors like the Lamberts. Docket No. 1 ¶ 44. Thus, according to the Lamberts, Octapharma and its unnamed alleged coconspirators "tortiously interfered with Plaintiffs' rights to provide donations and be compensated for same by other plasma collection companies." *Id.* ¶ 37.

To state a claim for tortious interference with prospective business relations, plaintiffs must allege four elements:

> (1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff[s] suffered actual harm or damage as a result of the defendant's interference.

*Culbertson v. Lykos*, 790 F.3d 608, 630–31 (5th Cir. 2015) (citation omitted).

This claim fails at the first element. *See Anderson II*, 2020 WL 7245075, at *15–16 (finding plasma donor plaintiffs failed to allege a reasonable probability they would have entered into any specific plasma donation contract). The "reasonable probability element" requires plaintiffs to "describe the specifics of a proposed agreement that never came to fruition." *Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861, at *3 (E.D. Tex. Sept. 30, 2021) (collecting cases). "Courts have consistently required plaintiffs to do more than vaguely identify potential business partners purportedly influenced by a defendant's alleged misconduct." *Id.* While the Lamberts allege that Octapharma interfered with their *rights* to donate plasma for compensation to other companies, such vague assertions do not create a reasonable probability that the Lamberts would have contracted with any particular company. *See Pureshield*, 2021 WL 4492861, at *3 (finding inadequate the plaintiff's "vague contention that it may have entered into a business relationship with unnamed 'customers or business partners'"); *Anderson II*, 2020 WL 7245075, at *15–16; *Uribe*, slip op. at 23–24. Therefore, the Lamberts have failed to state a claim for tortious interference with prospective business relations.

"Civil conspiracy is a 'derivative tort' in that 'a defendant's liability for conspiracy depends on participation in some underlying tort.'" *Anderson II*, 2020 WL 7245075, at *16 (quoting *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). Where the tort claim underlying a claim for civil conspiracy has been dismissed, the civil conspiracy claim must also be dismissed. *See Askanase v. Fatjo*, 130 F.3d 657, 676

(5th Cir. 1997). And because the Lamberts' tortious interference claim fails, so too does their claim for conspiracy. *See Three Legged Monkey, LP v. City of El Paso*, 2014 WL 12639964, at *7 (W.D. Tex. Nov. 10, 2014) (noting that the defendants "cannot be liable for tortious interference, and consequently, cannot be liable for conspiracy to commit tortious interference").

Accordingly, Octapharma's motion is **GRANTED** on this ground, and the Lamberts' tortious interference and conspiracy claims are **DISMISSED**.

### D. Privacy

The Lamberts' final cause of action is breach of privacy. Docket No. 1 ¶¶ 48–51. Octapharma moves to dismiss the claim, noting that the Lamberts have failed to cite any specific privacy rights that were violated by Octapharma's alleged conduct. Docket No. 4 at 12–13. Because the Lamberts failed to defend their privacy claim, the Court finds that they have abandoned it. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." (collecting cases)). The Court therefore **GRANTS** Octapharma's motion to dismiss the Lamberts' privacy claim. The claim is **DISMISSED** with prejudice. *See Davis v. CenturyTel Broadband Servs., LLC*, 2023 WL 4944656, at *4 (S.D. Tex. July 12, 2023) (dismissing with prejudice the plaintiffs' abandoned claims).

### E. Declaratory Judgment and Injunctive Relief

Octapharma finally asks the Court to dismiss the Lamberts' requests for declaratory and injunctive relief. Docket No. 4 at 13–14. The Lamberts seek a

declaratory judgment "that they are not Hepatitis B-positive and request Defendant be ordered and compelled to provide mandatory injunctive relief to correct each of their records, including any national database entries, registries, or lists." Docket No. 1 ¶¶ 52–53. The Court addresses each type of relief in turn.

### 1. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The statute "is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy." *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990) (citation omitted); *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 500 (5th Cir. 2020) (Oldham, J., concurring) (noting that the Declaratory Judgment Act "allows parties who would otherwise be defendants to seek relief as plaintiffs"). As a result, the statute "helps the parties avoid damages that might otherwise accrue." *Collin Cnty.*, 915 F.2d at 172. Courts have "broad discretion" in granting or denying declaratory judgment. *Anderson II*, 2020 WL 7245075, at *22 (quoting *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

Declaratory relief is inappropriate here for several reasons. First, proclaiming that the Lamberts "are not Hepatitis B-positive" and that "their test results were false-positive" is not a declaration of the parties' "rights and other legal relations." 28 U.S.C. § 2201(a). It's just an assertion of fact. Second, and relatedly, this "Court

16

is wholly ill-equipped" to make that assertion because it is a medical diagnosis. *Uribe*, slip op. at 26. Third, providing declaratory relief here would not serve the design of the statute: as plaintiffs, the Lamberts do not seek to "avoid damages that might otherwise accrue." *Collin Cnty.*, 915 F.2d at 172.

Accordingly, Octapharma's motion to dismiss the Lamberts' request for declaratory relief is **GRANTED** and that claim is **DISMISSED**.

### 2. Injunction

The Court does not, however, dismiss the Lamberts' request for an injunction against Octapharma. To obtain an injunction "for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). While Octapharma undisputedly reported them as positive for Hepatitis B in the past, the Lamberts have sufficiently alleged that Octapharma's conduct causes them "continuing harm" through the loss of income, stigma, the denial of health insurance and organ donations, and mental anguish. *Id.*; *see also Anderson II*, 2020 WL 7245075, at *22 (denying a motion to dismiss the plaintiffs' request for injunctive relief because the plaintiffs alleged that the "lifetime ban" and "wrongful inclusion" on the Registry was plausibly an "ongoing harm"); *Morris*, slip op. at 14–15.

Accordingly, Octapharma's motion to dismiss the Lamberts' request for injunctive relief is **DENIED**.

### F. Leave to Amend

The Lamberts also request that the Court grant them leave to amend their claims. Docket No. 8 at 19. "[D]istrict courts often afford plaintiffs at least one

opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Court's decisions on leave to amend are listed below.

## IV. CONCLUSION

As described above, Octapharma's motion is **GRANTED-in-part**. In sum, the motion to dismiss the Lamberts' claims for negligent processing, tortious interference with prospective business relations and conspiracy, breach of privacy, and declaratory judgment is **GRANTED**.

Further, the Court **GRANTS** leave to amend the negligent processing, tortious interference, and conspiracy claims; these claims are therefore **DISMISSED** without prejudice subject to amendment. However, amending the declaratory judgment claim would be futile, and the Lamberts have abandoned their privacy claim. Accordingly, these two claims are **DISMISSED** with prejudice.

Finally, the Court **DENIES** the motion on all other grounds.

So **ORDERED** and **SIGNED** this **26th** day of **August, 2025.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE